Gary DEVANEY, d/b/a DeVaney
Logging Company, Plaintiff–
Appellee,

v.

CONTINENTAL AMERICAN INSURANCE COMPANY; Daniel M. Speer, d/b/a Speer Holt Insurance, Defendants,

Tom E. Ellis, Appellant.

No. 91–7427.

United States Court of Appeals,
Eleventh Circuit.

May 5, 1993.

Tom E. Ellis, Kracke, Thompson & Ellis, Birmingham, AL, for appellant.

Mary A. Westbrook, Ralph M. Young, Gonce, Young & Westbrook, Florence, AL, Samuel H. Franklin, Lightfoot, Franklin, White & Lucas, Birmingham, AL, for defendants.

Frank H. Hawthorne, Jr., G. William Gill, McPhillips, Debardelaben & Hawthorne, Montgomery, AL, for plaintiff-appellee.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Petitioner Tom Ellis served as defense counsel for Continental American Insurance Company ("Continental") in a suit brought by Gary Devaney for nonpayment of a claim for damaged logging equipment. A third party defendant, Daniel Speer, d/b/a Speer–Holt Insurance Agency, ("Speer") participated in discovery but was dismissed on summary judgment prior to trial. The relationship between Continental and Devaney was highly acrimonious during the nineteen month pre-trial period, and each of the three parties in the suit filed motions for sanctions. The magistrate judge deferred ruling on these motions pending the completion of trial.

Subsequent to a jury trial which resulted in a judgment in Devaney's favor, the district court referred the motions for sanctions to the magistrate judge, who conducted a hearing and eventually recommended sanctions against Ellis under Fed.R.Civ.P. 37 and against Devaney's attorneys under Fed.R.Civ.P. 11 and 37. After considering the attorneys' objections to the magistrate's report, the district judge adopted the magistrate's recommendation in full and ordered, *inter alia*, that Ellis pay costs of $1,954.38 to Gary DeVaney.[1]

On appeal, Ellis raises three issues. He argues: 1) that the manner in which the court imposed sanctions denied him due process of law under the Fifth Amendment to the Constitution; 2) that the magistrate judge applied an erroneous legal standard under Fed.R.Civ.P. 37; and 3) that the court erred in adopting the magistrate's finding that no "substantial justification" excused Ellis' behavior during the relevant discovery period. For the reasons that follow, we AFFIRM the order of the district court.

## I. *Procedural History*

Gary Devaney filed the initial complaint in this case in the Circuit Court of Franklin County, Alabama, in June, 1989, and the defendants removed it to federal court shortly thereafter. The complaint contaiṇ̣d bad faith and breach of contract claims against Continental and Speer for failure to pay under a casualty policy for the fire loss of a Hydro–Ax 611 Filler Buster used in Devaney's logging business.

Upon Continental's [2] motion, the district court authorized an extension of time, to August 23, 1989, for Continental to reply to discovery requests which Devaney had served with the complaint. On August 7, Devaney filed a notice of deposition under Fed.R.Civ.P. 30(b)(6) and a request for production of documents under 30(b)(5). Continental objected to that portion of the notice which appeared to demand that it produce the president of Continental, John V. Loudermilk, as its 30(b)(6) corporate repre-

---

**1.** This sum reflects sanctions of $825.00, $504.38, $300.00 and $325.00 assessed against Ellis for Devaney's costs of filing two motions to compel discovery and two motions for sanctions to compel compliance with court orders.

**2.** Our use of a party's name in this factual summary is intended to incorporate, rather than exclude, a reference to that party's counsel. We do not decide whether the parties or their attorneys were responsible for the acts which were the subject of sanctions but merely review for clear error the district court's decision on that issue. See section II(C), *infra*. While Ellis directs our attention to "uncontroverted" evidence that Continental, and not he, caused the discovery delays at issue, we note that his contentions are uncontroverted only because neither his former client nor any other party filed a brief in response to his appeal.

sentative.[3] Devaney amended the notice of deposition three times during August and, in its final form, the notice included the original 30(b)(5) document requests and scheduled the deposition of John V. Loudermilk for September 6, 1989, in Indianapolis, Indiana.

On August 31, Continental filed an objection to the notice as amended, claiming 1) that some of the documents sought were either undiscoverable under state law or protected by the attorney/client privilege, and 2) that the 30(b)(5) request was unduly burdensome. On September 1, Ellis telephoned Devaney's counsel, Frank Hawthorne, to discuss whether the parties should proceed with the deposition scheduled for September 6. The parties dispute the substance of the conversation. Ellis contends that Hawthorne insisted on proceeding with the deposition notwithstanding Continental's newly filed objections, and Hawthorne contends that Ellis assured him Continental would provide substantially all of the requested documents at the deposition.

On September 5, after a holiday weekend, the magistrate judge and Mary Anne Westbrook, counsel for defendant Speer, received copies of Continental's August 31 objections. Westbrook telephoned Ellis and Hawthorne in Indianapolis, where each assured her individually that the scheduled deposition would proceed. At Loudermilk's deposition on September 6, Ellis attempted to characterize some of Loudermilk's responses as the responses of a 30(b)(6) representative but refused to concede that Loudermilk would serve as the corporate representative at trial and refused to identify a corporate representative. Ellis also refused to provide the documents described in Devaney's 30(b)(5) request. Westbrook objected to the conduct of both attorneys and informed them that she would seek sanctions against Continental for the cost of any future trip to Indiana made necessary by Ellis' failure to provide documents and a corporate representative. She filed a

motion to that effect on October 24 (Motion I). R1–43. Devaney filed a similar motion for sanctions on October 26 (Motion II). R1–44.

On October 18, Devaney filed a motion to compel answers to the interrogatories and document requests he had submitted to Continental in September. On October 26, Magistrate Judge Greene held a hearing on this motion and on the earlier motions for sanctions and orally instructed the parties to file supplemental briefs addressing Continental's objections to production of the requested material. On November 2, Judge Greene entered an order which reiterated his caution at the hearing that Continental should prepare the relevant files for immediate production in case he disallowed its objection. On December 7, Judge Greene granted substantially all of Devaney's October 18 motion. At Devaney's request, the court deferred consideration of his motion for sanctions until Continental complied with the other requirements of the order and the court likewise deferred consideration of Speer's motion for sanctions.

On January 12, 1990, Devaney filed a second motion for sanctions and renewed the October 18 motion for sanctions, noting that Continental had failed to comply with the December 7 order within the twenty day period allotted (Motion III). R1–55. On January 16, Speer filed a similar motion for sanctions and renewed his October 24 motion (Motion IV). R1–56. Judge Greene scheduled a hearing for January 26 and, on January 23, Continental filed the responses required by the December 7 order. At the January 26 hearing, Ellis asserted that Continental had had difficulty obtaining the requested documents. Ellis had not, however, requested a modification of the December 7 order or applied for an extension of time to reply. Judge Greene determined that Continental had by then complied with substantially all of the December 7 order

---

**3.** This notice and objection marked the beginning of a dispute about Continental's 30(b)(6) representative that continued until trial. Several of the motions for sanctions arose out of

Continental's failure to identify its corporate representative until late in the discovery process.

and again deferred the question of sanctions.

On May 16, 1990, Devaney filed a motion to compel more complete answers to his fifth set of interrogatories. After a hearing, the magistrate judge entered an order on May 25 directing Continental to answer five of the disputed interrogatories. He determined that four interrogatories had become moot because of a concession made by Continental at the hearing, and he denied Devaney's motion as to four additional interrogatories. On August 7, Ellis filed a motion to compel answers to interrogatories which Judge Greene granted on August 14 in an order that included a warning to counsel that the district court would likely hold a post-trial hearing to explore the propriety of Rule 37 and Rule 11 sanctions against them. R2–112.

On September 21, Ellis filed a motion to compel production of the transcript of a telephone conversation between a plaintiff's witness, Dwight May, and plaintiff's counsel Hawthorne. During that conversation, May implied that Ellis had encouraged him to misstate a fact in his affidavit. Depo. of Dwight May 73–87. On September 27, Devaney filed a motion to compel answers to his seventh consolidated discovery request and moved for sanctions based on Continental's failure to comply with the court's order of May 25. (Motion V). R2–144. In an order entered on November 27, Judge Greene granted Continental's motion to produce May's statement, granted Devaney's motion to compel, and again deferred the issue of sanctions. District Judge Acker subsequently vacated this order and reserved ruling on the motions pending the scheduled deposition of Dwight May. At a pre-trial conference on December 28, Judge Acker informed Ellis that the transcript of May's conversation with Hawthorne would be admitted at trial and that he would disqualify Ellis from testifying as a witness in opposition to the substance of that conversation unless Ellis withdrew as trial counsel. Ellis withdrew in January, 1991, but did not testify at trial. The court took no further action regarding the May–Hawthorne telephone conversation.

In the meantime, the district court had granted a summary judgment motion dismissing defendant Speer. On October 12, 1990, Speer filed a motion for Rule 11 sanctions against DeVaney on the basis that the claims against Speer were frivolous. (Motion VI). R3–154.

Following a jury trial of Devaney's remaining claims, and concurrent with the entry of judgment, the district court ordered that Speer's October 12 motion for sanctions and "the *sua sponte* questions of sanctions to be imposed on Tom C. [sic] Ellis" would be considered upon submission of affidavits and briefs. R3–196. On the following day, District Judge Acker requested that Magistrate Judge Greene prepare findings as to "what, if any, sanctions should be imposed against any lawyer or party in this cause pursuant to Rule 11 and/or Rule 37 F.R.Civ.P." R3–198. On January 31, Ellis filed a motion for clarification of the acts or occurrences which might form the basis of sanctions. R3–199. On February 5, Judge Acker entered an order explaining that he had referred Ellis' motion for clarification to the magistrate and that his January 23 order was not intended to "exonerate defendant Continental American Insurance Company, which, in the court's opinion, may also be subject to sanctions pursuant to Rule 37, depending on the findings by the magistrate judge...." R3–202. Also on February 5, Magistrate Judge Greene entered an order explaining that he would consider submissions in support of or in opposition to penalties under the six motions for sanctions described above as well as "any other consideration of sanctions as set out in Judge Acker's referral order." R2–201.

After considering affidavits submitted by the parties, Magistrate Judge Greene scheduled a hearing. The scheduling order, entered March 5, listed specific topics for discussion, including "the apportionment of sanctions to be imposed on Continental American Insurance Company, Inc. and/or its attorney for those portions of the discovery requests to [sic] which a motion to compel was ultimately entered...." R4–210. Ellis attended the March 18 hearing along with Continental's new attorney,

Speer's attorney and Devaney's attorneys. At the hearing, the magistrate discussed each of the motions listed in the February 5 order and conducted a thorough review of the activities relevant to each of those motions. R13.

On April 10, the magistrate entered a recommendation that the court impose sanctions upon Ellis and upon Devaney's counsel. The attorneys filed objections. Judge Acker considered the objections and then adopted the magistrate's recommendation in full. Ellis filed this appeal.[4]

## II. Analysis

We review *de novo* Ellis' claims that the court's imposition of sanctions denied him constitutionally effective notice and that the court applied an erroneous legal standard under Rule 37. We review for clear error the finding of the magistrate, adopted by the district court, that the discovery conduct which was the object of sanctions was without substantial justification. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (*per curiam*).

The trial court imposed sanctions upon the petitioner under subsections (a)(4) and (b)(2) of Federal Rule of Civil Procedure 37. Rule 37(a)(4) authorizes a trial court to award expenses, including reasonable attorneys' fees, to the prevailing party when a motion is made for an order compelling discovery.[5] The rule was toughened in 1970 to mandate that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified. Fed.R.Civ.P. 37 Advisory Committee Notes (West 1991 Revised). Rule 37(b)(2) authorizes the court to impose sanctions upon a party or an attorney for failure to obey a court order to provide or permit discovery.[6]

### A. Due Process

■ An award of attorney's fees under Rule 37 implicates interests protected by the Due Process Clause of the Fifth Amendment. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (Like other sanctions, attorney's fees should not be assessed lightly or without fair notice and an opportunity for a hearing on the record); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440 (11th Cir.1985). Assessment of costs and attorneys fees is, however, one of the lesser sanctions contemplated by the Federal Rules, *see Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir.1988) (Rule 37), *Donaldson v. Clark*, 819 F.2d 1551, 1557–1561 (11th Cir.1987) (Rule 11), and it presents a lesser due process concern than, for example, outright dismissal of an action. *Roadway Express*, 447 U.S. at 767 n. 14, 100 S.Ct. at 2464 n. 14; *and see Donaldson*, 819 F.2d at 1561 (The more serious the

---

**4.** The related appeal filed by Devaney's counsel is no longer pending before this court.

**5.** In pertinent part, the rule provides:
Rule 37. Failure to Make or Cooperate in Discovery: Sanctions
(a) Motion for Order Compelling Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery....
(4) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

**6.** Rule 37(b) Failure to Comply with Order

. . . .
(2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
[specific suggestions omitted]....
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

possible sanction both in absolute size and in relation to actual expenditures, the more process that will be due).

■ Ellis maintains that he was denied due process because he was never placed on notice of the actions for which the court was considering sanctions. He bases this alleged failure of notice on two facts: 1) the naming of Continental, and not Ellis, in Devaney's and Speer's motions for sanctions; and 2) Judge Acker's mention of a *"sua sponte* question" of sanctions in his January 23 order. We address the due process implications of each of these facts in turn.

■ The five relevant motions for sanctions (Motions I through V) did in fact name Continental as the target of sanctions. We are satisfied, however, that the motions were sufficient to place Ellis on notice of potential personal liability for the activities referred to therein. Rule 37 subsections (a) and (b) permit the court to impose sanctions upon a party or its attorney or both and establish no preference between these options. Because the apportionment of fault between an attorney and client is the court's responsibility, a party listing only its opponent in a motion for sanctions does not absolve the opponent's attorney of potential liability. Instead, the movant merely provides the court with the double option of holding responsible either the opponent or the attorney either under the motion or *sua sponte*. Accordingly, a motion for sanctions under Rule 37, even one which names only a party, places both that party and its attorney on notice that the court may assess sanctions against either or both unless they provide the court with a substantial justification for their conduct.

While the motions themselves were thus sufficient to satisfy the Due Process Clause, any uncertainty Ellis may have had about the possibility of personal liability should have been set to rest by the court's subsequent handling of the sanctions process. Not only did Magistrate Judge

Greene list the motions under which sanctions were being considered, he also specified questions to be discussed at the March 18 hearing and included the question of apportioning fault between Continental and Ellis. Ellis was or should have been on notice that he could be held accountable under Motions I–V. Accordingly, we reject his suggestion that the imposition of sanctions denied him constitutionally effective notice.[7]

■ Petitioner's next contention is that he was denied due process by Judge Acker's inclusion of a *"sua sponte* question" of sanctions in the order of January 23. Given the pervasiveness of the parties' intransigence in this case, Judge Acker's order may well have left Ellis in some doubt about the court's particular concerns. As early as August 14, 1990, however, Magistrate Judge Greene warned:

> ... [T]he failure of counsel for the plaintiff and the defendant, Continental American Insurance Company, to resolve numerous discovery problems have [sic] contributed substantially and unnecessarily to the costs of this litigation to the apparent benefit of neither party. Counsel for the plaintiff and counsel for the defendant, Continental American Insurance Company, should be aware that the district court will likely conduct a hearing at the conclusion of this litigation to determine whether Rule 11 or Rule 37 sanctions are required as a result of the conduct of any attorney in this action. R 2–112 at 1–2.

Ellis should reasonably have taken this warning to mean that he might be subject to sanctions from one of two sources: the motions for sanctions previously filed by Devaney and Speer or the sanctions power of the court under the Federal Rules. As discussed above, no error flows from the sanctions imposed under the Rule 37 motions filed by the parties. With regard to sanctions by the court's own motion, it appears from the record that Judge Acker may have considered Rule 11 sanctions

---

7. Ellis suggests, incorrectly, that the court assessed costs for motions to compel which were unrelated to the motions for sanctions listed in

Magistrate Judge Greene's February 5 order. A review of the record reveals no such irregularity.

against Ellis related to the nature of his contacts with plaintiff's witness Dwight May. Assuming, *arguendo*, that Judge Acker did consider Rule 11 sanctions against Ellis, he imposed none. In addition, Magistrate Judge Greene made it clear that such sanctions were outside the scope of his investigation of sanctions and the March 18 hearing. R4–210 at 4 n. 3. We reject Petitioner's suggestion that the court's consideration of Rule 11 sanctions, if it occurred, implicates the Due Process Clause.

Far from depriving Ellis of due process, the court's careful handling of the issue of sanctions provided Ellis with substantial process in an area, monetary sanctions, where due process protection is narrowly defined. As the Supreme Court has instructed, "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link v. Wabash R. Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (upholding dismissal of an action without notice or a hearing for attorney's failure to prosecute); *accord Carlucci*, 775 F.2d at 1452. The record contains ample evidence that Ellis was or should have been aware that his conduct in this litigation would likely result in sanctions against him. The process provided to him was more than adequate and the court's imposition of sanctions did not violate the Fifth Amendment.

## B. *Rule 37 standards*

■ Petitioner next argues that a trial court may impose sanctions upon an attorney under Rule 37 only after making a specific finding that the attorney instigated discovery misconduct. In support of this position, Ellis points to language in Rule 37 which instructs the court that it may impose sanctions upon a "party or attorney *advising* such conduct." (emphasis added) Fed.R.Civ.P. 37(a)(4). He suggests that the burden of establishing an attorney's responsibility for discovery misconduct should rest either on the attorney's client or on the party moving for sanctions.

Neither the language nor the purpose of Rule 37 support the procedural requirement suggested by the petitioner. The Rules Committee drafted the 1970 amendments to encourage the use of sanctions, noting: "It appears that the courts do not utilize the most important available sanction [Rule 37(a) ] to deter abusive resort to the judiciary," and later, "The [1970] amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices." Fed.R.Civ.P. 37 Advisory Committee Notes. Requiring the court to conduct a mini-trial in order to prove the involvement of an attorney in particular discovery conduct could only discourage the court from ordering sanctions.[8] A mini-trial in this case, for example, would have set as adversaries an attorney and a client who had already demonstrated substantial skill at obfuscation and delay.

Accepting Ellis' position would require us to incorporate into Rule 37 a presumption that courts considering Rule 37 sanctions must impose those sanctions on the client unless the client proves that his or her attorney instigated the relevant misconduct.[9] The phrase "attorney advising such conduct" does not, however, exclude

---

**8.** In the related context of Fed.R.Civ.P. 11, we noted that "It would be counterproductive if the rule itself were to cause an increase in unnecessary litigation by mandating extensive collateral procedures as prerequisites to the imposition of sanctions." *Donaldson*, 819 F.2d at 1559.

**9.** Ellis argues that Magistrate Judge Greene erred in employing the *reverse* presumption: that an attorney is liable for discovery misconduct unless he proves that his client was responsible. Ellis bases this view on the magistrate's recommendation that sanctions be imposed

upon Ellis because there was "no evidence that the failure to [comply] . . . was the result of any conduct on the part of the defendant Continental." R4–219. Read in the context of the magistrate's report, however, it is clear that this statement reflects not a presumption of Ellis' liability but rather the judgment of the magistrate, based on all the evidence discussed at the hearing and in his report, that Ellis caused the discovery delays for which sanctions were imposed. This judgment is exactly the sort that Rule 37 empowers the court to make.

either an attorney's willful blindness or his acquiescence to the misfeasance of his client; to the contrary, the phrase instructs that when an attorney advises a client in discovery matters, he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process. Sanctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar.[10] Rule 37 identifies attorneys advising, or overseeing, discovery as possible subjects of sanctions along with their clients and vests the trial court with broad discretion to apportion fault between them, providing in both subsection (a)(4) and subsection (b)(2) that the award of expenses or costs may be demanded of a party, or its attorney, or both. The Advisory Committee Notes to the 1970 amendments insert a single caveat: "It is not contemplated that expenses will be imposed on the attorney merely because the party is indigent." Fed.R.Civ.P. 37 Advisory Committee Notes. Rule 37 makes no presumptions of fault and we reject Ellis' suggestion that an attorney is immune from Rule 37 sanctions unless his client or opponent proves otherwise.

■ Along similar lines, Ellis argues that Rule 37 requires the court to make a finding of bad faith before it may impose sanctions upon an attorney. However, the 1970 amendments were specifically enacted to eliminate the possibility that a bad faith requirement would be read into the rule, and they contain no suggestion that bad faith should remain a prerequisite when an attorney, as opposed to a client, is subjected to sanctions. Fed.R.Civ.P. 37 Advisory Committee Notes. In *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir. Unit A June, 1981)[11], our predecessor circuit, confronted with the implacable language of Rule 37, rejected the notion of a bad faith requirement and came to the "inescapable conclusion" that sanctions under Rule 37(a)(4) are mandatory unless the court finds a substantial justification for discovery delays. We are satisfied that subsection 37(b)(2) likewise demands no demonstration of bad faith.

Ellis cites this court's decision in *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, decided after *Merritt*, in support of a bad faith requirement. As noted by Magistrate Judge Greene in his report and recommendation, however, *Carlucci* merely upheld a district court's earlier findings of bad faith as relevant factors in the calculation of sanctions without holding that such findings were a necessary precursor of sanctions.

The language "advising such conduct" in Rule 37 does not incorporate either heightened procedural requirements or a bad faith test into that rule. A trial court is vested with broad discretion to impose monetary sanctions subject only to limited due process protection, and the district court in this case committed no legal error.

### C. *Substantial Justification*

■ We review for an abuse of discretion the finding of the magistrate, adopted

---

10. This principle was eloquently enshrined by Thomas Goode Jones in the 1887 Code of Ethics of the Alabama State Bar Association, the first of its kind in the nation:

    An attorney owes entire devotion to the interest of his client, warm zeal in the maintenance and defense of his cause, and the exertion of the utmost skill and ability, to the end that nothing may be taken or withheld from him, save by the rules of law, legally applied. No sacrifice or peril, even to loss of life itself, can absolve from the fearless discharge of this duty. Nevertheless, it is steadfastly to be borne in mind that the great trust is to be preformed within, and not without, the bounds of the law which creates it. The attorney's office does not destroy man's accountability to his Creator, or loosen the duty of obedience to law, and the obligation to his neighbor; and it does not permit, much less demand, violation of law, or any manner of fraud or chicanery, for the client's sake."

    Canon 10, *Code of Ethics, Proceedings of the Tenth Annual Meeting of the Alabama State Bar Association*, (Montgomery, AL 1887).

11. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) we adopted as binding precedent decisions of the Fifth Circuit, including Unit A of that circuit, handed down prior to October 1, 1981.

by the district court, that there was no substantial justification for the conduct for which the court ordered sanctions against Ellis. We are instructed to examine whether that finding is "fully supported by the record," *National Hockey League,* 427 U.S. at 642, 96 S.Ct. at 2780, and to find clear error only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). We find no such error.

The Supreme Court has clarified that an individual's discovery conduct should be found "substantially justified" under Rule 37 if it is a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted).

Magistrate Judge Greene recommended an award of costs and fees for a course of conduct leading up to and flowing from his order of December 7. Devaney's motion of October 18 sought to compel responses to his third set of interrogatories and second request for production of documents. Ellis provided answers only after the motion to compel was filed and the magistrate, finding the answers largely unresponsive to Devaney's interrogatories, granted the motion to compel in his December 7 order. Ellis then failed to comply with the December 7 order within the allotted twenty days and both Devaney and Speer filed motions for sanctions (Motions III and IV). The magistrate judge scheduled a hearing and only then did Ellis file responses. Noting that the information requested in Devaney's third set of interrogatories included such simple items as a request for the correct name and address of a Continental policyholder discussed at the September depositions, the magistrate found no substantial justification for the failure to comply.

The court awarded $825.00 for Devaney's costs of filing the October 18 motion and $504.38 for the costs of filing the January motion for sanctions.

The court also imposed sanctions for Ellis' failure to comply with the May 25, 1990 order granting Devaney's motion to compel answers to interrogatories. Here again, Devaney filed a successful motion to compel and then a motion for sanctions when Ellis failed to comply with the court order granting the motion to compel. The magistrate judge found that Ellis' initial failure to respond to several of the disputed interrogatories was not substantially justified. Five of the unanswered interrogatories involved, in the magistrate's words, "straightforward, clearly discoverable matters," and the court awarded Devaney the costs of filing a motion in order to secure answers to those requests. In addition, the magistrate imposed a sanction of $325.00 under Rule 37(b)(2) for the plaintiff's cost of filing a second motion to encourage compliance with the court's May 25 order.[12]

In the lengthy sanctions hearing on March 18, Petitioner presented no evidence that the failures to respond to discovery requests and failures to comply with court orders were substantially justified. In each case, Ellis simply failed to provide responses without petitioning the court for extensions of time and without informing the parties of any hardship. The district court committed no error in adopting the findings of the magistrate judge and properly adopted the sanctions recommended, sanctions which demonstrate substantial restraint on the part of the court given the conduct of the participants in this litigation. The judgment of the district court is AFFIRMED.

---

12. The $325.00 and $504.38 sanctions were imposed under Rule 37(b)(2). Ellis argues that Rule 37(b)(2) does not authorize a court to award attorney's fees for a motion for sanctions because such expenses are distinguishable from "expenses, including attorney's fees, caused by [a] failure" to comply. See n. 6 *supra.* We cannot agree. The cost of a motion for sanctions which is filed in order to compel obedience with a court order falls within the ambit of "expenses ... caused by [a] failure to comply."