BANKATLANTIC, A Federal Savings Bank f/k/a Atlantic Federal Savings & Loan Association of Fort Lauderdale, Plaintiff–Appellee, Cross–Appellant,

v.

BLYTHE EASTMAN PAINE WEBBER, INCORPORATED, Defendant–Appellant, Cross–Appellee,

Ruden, Barnett, McClosky, Smith, Schuster & Russell, Appellant.

BANKATLANTIC, a federal savings bank f/k/a Atlantic Federal Savings and Loan Association of Fort Lauderdale, Plaintiff–Counterclaim Defendant–Appellee, Cross–Appellant,

v.

BLYTHE EASTMAN PAINE WEBBER, INC., Defendant–Counterclaim Plaintiff–Appellant, Cross–Appellee,

Ruden, Barnett, McClosky, Smith, Schuster & Russell, Appellant.

Nos. 91–5613, 91–5919.

United States Court of Appeals, Eleventh Circuit.

Jan. 31, 1994.

John H. Schulte, Paul J. McMahon, Jorden Schulte & Burchette, Miami, FL, for Blythe Eastman.

Michael D. Katz, Katz, Barron, Squitero & Faust, Miami, FL, for Ruden, Barnett.

Eugene E. Stearns, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, FL, for BankAtlantic.

John H. Schulte, Paul J. McMahon, Jorden, Schulte & Burchette, Miami, FL, for Paine Webber in No. 91–5919.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Finding no abuse of discretion, we affirm the district court's imposition of sanctions against a law firm and its client for failure to comply with a discovery order.

## FACTS

This appeal involves the district court's imposition of sanctions against appellants, Paine Webber, Inc. and Ruden, Barnett, McClosky, Smith, Schuster, and Russell, P.A. (Ruden Barnett) for withholding evidence in violation of a prior discovery order. *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224 (S.D.Fla.1989).

BankAtlantic is a federally chartered savings and loan institution. In 1984, BankAtlantic retained Paine Webber as a financial advisor to assist it in transactions to avoid hostile takeover attempts. BankAtlantic also used Paine Webber's services to broker two transactions known as "interest rate swaps." [1] Paine Webber recommended that

---

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. An interest rate swap is an agreement in which one party swaps some of its variable rate interest obligations for the other party's fixed rate interest obligations.

BankAtlantic enter into two interest rate swaps with Homestead Savings. BankAtlantic did so.[2] Because interest rates fell drastically · soon after BankAtlantic entered into the swap agreements, BankAtlantic suffered losses allegedly in excess of $30 million.

In August, 1987, BankAtlantic brought this lawsuit against Paine Webber, alleging. that Paine Webber failed to disclose the risks involved in interest rate swaps, thus causing BankAtlantic's losses. BankAtlantic also al- leged that Paine Webber failed to disclose its relationship with Homestead and charged that Paine Webber created a conflict of interest.

During litigation, BankAtlantic served Paine Webber with its first request for production, requesting "[a]ll correspondence between you and Homestead Savings" and "[a]ll documents relating to your association with Homestead Savings." BankAtlantic defined "you" and "your" to include all affiliates of Paine Webber. Paine Webber filed objections to the request, including a claim that the request was overbroad in requiring Paine Webber to ensure production from its affiliates.

BankAtlantic thereafter filed a motion to compel production. At the hearing on the motion to compel production, Paine Webber promised "to produce all documents in its 'custody, control or possession.'" Based on Paine Webber's representation, the district court, on July 25, 1988, denied the motion to compel from Paine Webber's affiliates, but granted the motion in all other respects.[3] The district court stated that BankAtlantic's "motion to compel production of documents from [Paine Webber's] affiliates is denied; however, counsel may subpoena those documents from the affiliate corporations directly." Thereafter, BankAtlantic served subpoenas on several Paine Webber affiliate cor- porations, but did not subpoena documents from Paine Webber Real· Estate Securities, Inc. (PWRES).

On May 26, 1989, BankAtlantic moved the district court to strike Paine Webber's pleadings and enter a default, or, in · the alternative, impose lesser sanctions for Paine Webber's alleged defiance of the prior discovery order to compel production of documents. On July 10, 1989, the district court ruled against BankAtlantic's request to strike Paine Webber's pleadings and imposed lesser sanctions. The district court ordered Paine Webber to produce "all documents from California and New York requested by plaintiff" and required Paine Webber and Ruden Barnett to "bear equally the reasonable costs of [BankAtlantic's] time and preparation in filing the motion to strike and in preparing for the new trial date, including the cost of expedited discovery."

The documents from California and New York concern litigation between Paine Webber, its affiliates and Homestead in the Northern District of California. *BankAtlantic*, 127 F.R.D. at 227. The California litigation materials comprise three independent cases. In the first action, Homestead sued PWRES, alleging breach of a mortgage loan servicing agreement (*Homestead I*). The second action involves Homestead's lawsuit against Paine Webber and various affiliated companies, seeking to hold the companies liable for the conduct of PWRES at issue in *Homestead I* under an alter ego theory (*Homestead II*). The third action involves Paine Webber, PWRES, and various entities in a lawsuit against an insurance carrier seeking recovery of amounts paid in the settlement of *Homestead I* and *Homestead II* (*Firemen's Fund* case). *BankAtlantic*, 127 F.R.D. at 227–28.

---

**2.** BankAtlantic agreed to swap some of its variable interest obligations for Homestead's fixed rate interest obligations. · Although the parties did not actually transfer principal obligations, they agreed to compensate each other as interest rates fluctuated. "Thus, if interest rates rose above the fixed rate, Homestead would pay [BankAtlantic] the difference between the amount due on the variable rate obligations and the amount · due on the fixed rate obligations. Similarly, if interest rates fell, [BankAtlantic] would pay

Homestead the difference." *BankAtlantic*, 127 F.R.D. at 226.

**3.** According to Paine Webber, Paine Webber is a subsidiary of Paine Webber Group, Inc. and affiliates itself with over 100 corporations. Paine Webber Real Estate Securities, Inc. (PWRES), a separate entity which transacts its · own distinct business, is an affiliate and "sister corporation" to Paine Webber.

The district court reviewed the pleadings and other record evidence produced in these three California cases and determined that the documents were "manifestly relevant and material evidence" to BankAtlantic's action against Paine Webber. *BankAtlantic*, 127 F.R.D. at 228.

The parties continued litigation, and on November 24, 1989, the district court entered final judgment in favor of Paine Webber, expressly retaining jurisdiction to assess costs and fees in order to enforce the July 10, 1989, sanction order. The sanction order specifically states that "the amount of costs and fees is to be determined post-trial."

Thereafter, on March 7, 1990, BankAtlantic moved the court for fees and costs pursuant to the sanction order. On July 3, 1991, the court adopted a United States Magistrate Judge's report and recommendation and ordered payment of sanctions against Paine Webber and Ruden Barnett in the amount of $350,078.80. The court also ordered BankAtlantic to pay Paine Webber, as prevailing party, taxable costs in the amount of $176,-660.80. The district court denied Ruden Barnett's motion to vacate the sanction order. Paine Webber and Ruden Barnett appeal the July 3, 1991, order. BankAtlantic cross-appeals, requesting post-judgment interest on the sanction amount.

## CONTENTIONS OF THE PARTIES

Paine Webber contends that the sanction order violates its due process rights, and is an abuse of the district court's discretion because no court order exists directing it to produce the California litigation files. Additionally, according to Paine Webber, BankAtlantic suffered no prejudice, failed to prove that the documents at issue were in its possession, and the documents were irrelevant and immaterial. Ruden Barnett contends that the district court's findings of fact are clearly erroneous. BankAtlantic contends that the district court did not abuse its discretion in imposing sanctions against Paine Webber and Ruden Barnett.

Paine Webber also contends that the district court erred in refusing to award interest on its award of costs, and urges that this court deny BankAtlantic's cross appeal. BankAtlantic contends that an award of post-judgment interest is mandatory; therefore, both parties are entitled to post-judgment interest from the date of judgment.

## ·ISSUES

This appeal involves the following issues: (1) whether the district court abused its discretion in imposing sanctions against Paine Webber and Ruden Barnett; and (2) whether BankAtlantic and Paine Webber are entitled to interest on the fee and cost awards, and if so, from what date and at what rate.

## DISCUSSION

### I. Sanction Order

#### A. Standard of review

■ It is well settled that "the standard of review for an appellate court in considering an appeal of sanctions under rule 37 is sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record." *Pesaplastic C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1519 (11th Cir. 1986). *See also, Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1446–47 (11th Cir.1985) (federal courts have inherent power to impose appropriate sanctions for failure to comply with court orders). The district court has broad discretion, and this is "especially true when the imposition of monetary sanctions is involved." *Pesaplastic*, 799 F.2d at 1519. To reverse the district court, we must be "left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *Dorey v. Dorey*, 609 F.2d 1128, 1135–36 (5th Cir.1980).

#### B. Willfulness or bad faith

Pursuant to Federal Rules of Civil Procedure 37, the district court imposed monetary sanctions against Paine Webber and Ruden Barnett for failure to comply with the court's July 25, 1988, discovery order. Rule 37 provides, pertinent part,

If a party ... fails to obey an order to provide or permit discovery ... the court

in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:

. . . . .

(C) An order striking out pleadings or parts thereof ... or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

In this case, the district court considered entering a default, but did not do so in light of the severity of such a measure. *BankAtlantic,* 127 F.R.D. at 235 ("a twenty-nine million dollar default would be a disproportionate sanction").

■ Ruden Barnett argues that rule 37 sanctions are permissible only upon a showing of willfulness, bad faith, or fault in failure to comply with discovery. Ruden Barnett relies upon precedent reviewing a district court's default judgment or dismissal of the complaint as the sanction for noncompliance. Our caselaw is clear that only in a case where the court imposes the most severe sanction— default or dismissal—is a finding of willfulness or bad faith failure to comply necessary. "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." *E.g., Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 181, 126 L.Ed.2d 140 (Oct. 4, 1993); *See also Marshall v. Segona,* 621 F.2d 763, 769 (5th Cir.1980) (monetary sanctions permissible where noncompliance with order "not in bad faith nor callous disregard"). A court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party.

In the case of *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the Supreme Court, in dicta, discussed the relevance of 'willfulness' and 'good faith.' The Court obliterated the lower court's apparent distinction between 'failure' and 'refusal' to comply with its discovery order, thus reversing and remanding the case. The Court observed, at 207–208, 78 S.Ct. at 1093:

.... Petitioner has urged that the word 'refuses' implies willfulness and that it simply *failed* and did not *refuse* to obey since it was not in willful disobedience. But this argument turns on too fine a literalism and unduly accents certain distinctions found in the language of the various subsections of Rule 37. Indeed subsection (b), as noted above, is itself entitled "*Failure to Comply with Order.*" (Italics added.) For purposes of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. So construed the Rule allows a court all the flexibility it might need in framing an order appropriate to a particular situation. Whatever its reasons, petitioner did not comply with the production order. *Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply.* [Emphasis supplied.]

In reconciling two seemingly contradictory landmark decisions, the Court further explained its rationale:

... But the Court took care to emphasize that *the defendant had not been penalized '... for a failure to do that which it may not have been in its power to do.' All the State had required 'was a bona fide effort to comply with an order ...,* and therefore *any reasonable showing of an inability to comply would have satisfied the requirements ...'* of the order. [Emphasis added.] [*Hammond Packing Co. v. Arkansas*] 212 U.S. [322] at page 347, 29 S.Ct. [370] at page 378 [53 L.Ed. 530 (1909)].

*Familias Unidas v. Briscoe,* 544 F.2d 182, 191–92 (5th Cir.1976) (footnote omitted) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 207–08, 78 S.Ct. 1087, 1093–94; *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 347, 29 S.Ct. 370, 378, 53 L.Ed. 530 (1908)). *See also* Fed. R.Civ.P. 37, Notes of Advisory Comm., 1970 Amendment (revision in language of rule, changing "refusal" to "failure" so as to eliminate the court-made requirement of willfulness and "bring the rule into harmony with the *Societe Internationale* decision").

■ Ruden Barnett asserts that it did not know of the *Homestead II* and *Firemen's Fund* cases. The district court found, "at a minimum, counsel failed to meet its obligation to search [Paine Webber's] corporate and attorney files for responsive documentation" and "acted in complete disregard of its responsibilities." *BankAtlantic,* 127 F.R.D. at 233. Although Ruden Barnett suggests that the evidence shows that it reasonably relied upon its client and client's in-house counsel's representations, Ruden Barnett fails to show that the district court's findings are clearly erroneous regarding Ruden Barnett's failure to comply with the discovery order. We conclude that sufficient evidence supports the district court's findings concerning Ruden Barnett's culpability in failing to comply with the discovery order. The district court made numerous credibility determinations which we give "due regard," with deference to the lower court. *Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988).

Ruden Barnett did not make all reasonable efforts to comply with the court's order. *See In re Chase & Sanborn Corp.,* 872 F.2d 397, 400 (11th Cir.1989) (pursuant to rule 37, defendants must show, to avoid sanctions for noncompliance, that they made all reasonable efforts to comply). Ruden Barnett failed to search the *Homestead I* files for documents responsive to the discovery order when Ruden Barnett had full access to the files. Ruden Barnett has not shown "substantial justification" for noncompliance. *E.g.,* Fed. R.Civ.P. 37(b)(2).

## C. Due process

We review *de novo* Paine Webber's claim that the sanction order violates due process. *Devaney v. Continental American Ins. Co.,* 989 F.2d 1154, 1159 (11th Cir.1993). Paine Webber asserts that because neither the July 25, 1988, discovery order nor any other court order required Paine Webber to discover the California litigation materials, it did not receive constitutionally sufficient notice for the imposition of sanctions. Paine Webber further argues that the sanction order is "unjust" and violates due process because BankAtlantic suffered no prejudice from the failure to discover the materials, and the materials were irrelevant and immaterial to BankAtlantic's case.

■ The district court's award of reasonable costs and attorney's fees pursuant to rule 37 implicates the Due Process Clause of the Fifth Amendment. *Devaney,* 989 F.2d at 1159. "[T]he Supreme Court has interpreted the Rule 37 requirement of a 'just' sanction to represent 'general due process restrictions on the court's discretion.'" *Malautea,* 987 F.2d at 1542 (quoting *Insurance Corp. of Ireland, Ltd., v. Campagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982)). We must determine whether the discovery order put Paine Webber on notice of the necessity to discover the California litigation materials and whether the sanction is "just" under the circumstances.

### (1) Discovery Order

■ At the hearing on BankAtlantic's motion to compel production, Paine Webber promised to produce all documents in its "custody, control or possession." As a result of this promise, the district court denied BankAtlantic's motion to compel production of documents from Paine Webber's affiliates, and in its July 25, 1988, discovery order, stated that BankAtlantic's counsel could subpoena those documents directly from the affiliate corporations. The court granted BankAtlantic's motion to compel production of documents requested from 1983 to the date of the order. BankAtlantic's request for production of documents included a request for

all "documents relating to [Paine Webber's] association with Homestead Savings...."

Any and all documents from *Homestead II* and *Firemen's Fund* concerning Paine Webber's relationship with Homestead should have been disclosed because Paine Webber was a named party to those actions and the documents concerned Paine Webber's relationship with Homestead. *Homestead I* was the principal case that formed the basis of *Homestead II* and *Firemen's Fund.* Because *Homestead II* and *Firemen's Fund* related to the *Homestead I* litigation, we agree with the district court that Paine Webber should have disclosed related documents from the *Homestead I* materials.

Moreover, evidence exists that Paine Webber possessed in its New York files the underlying agreement between PWRES and Homestead upon which the *Homestead I* dispute was based. Also, "[b]oth California counsel and [Paine Webber's] in-house counsel testified that [Paine Webber] enjoyed the rights of access to all attorney files for Defendants in the California litigation." *BankAtlantic*, 127 F.R.D. at 230. Despite testimony to the contrary, the district court weighed the witnesses' testimony and concluded that Paine Webber did have access to the files. *BankAtlantic*, 127 F.R.D. at 230 n. 3. We find no reason to overturn this finding.

We reject Paine Webber's argument and agree with the district court that the discovery order gave Paine Webber constitutionally sufficient notice of the duty to disclose the California litigation materials.

### (2) Prejudice to BankAtlantic

■ Paine Webber argues that because the California litigation materials contained no relevant or material evidence, BankAtlantic cannot show prejudice. We disagree as discussed in (3) below. As the district court points out, BankAtlantic learned of Paine Webber's discovery violation on the eve of trial. The district court found that BankAtlantic suffered prejudice, resulting from the time and expense of wasted trial preparation. BankAtlantic "was poised to present its case when volumes of new evidence were uncov-

ered." *BankAtlantic*, 127 F.R.D. at 233. We agree with the district court's findings.

### (3) Relevance and Materiality

■ Both Paine Webber and Ruden Barnett argue that the California litigation materials were irrelevant and immaterial to BankAtlantic's lawsuit. The district court disagreed and found "remarkable" the alleged "revelation" in the materials for BankAtlantic that Butch Tharp, an alleged key player in the interest rate swap between BankAtlantic and Homestead, was not an employee of Paine Webber but of PWRES. BankAtlantic sued Paine Webber in large part because of the conduct of Tharp, who allegedly matched BankAtlantic with Homestead. BankAtlantic asserted that it always operated under the belief that Tharp was a Paine Webber employee. The California litigation examined a lengthy relationship between PWRES and Homestead. The fact that Tharp may have had a close connection with Homestead through PWRES is relevant and material to BankAtlantic's conflict of interest theory. Thus, the district court found this piece of evidence important to the relevance and materiality of the California litigation materials. *BankAtlantic*, 127 F.R.D. at 228.

Paine Webber and Ruden Barnett dispute the district court's finding that BankAtlantic first became aware of Tharp's employment with PWRES as a result of documents from the California litigation materials. They assert that BankAtlantic at all times knew Tharp worked for PWRES and not Paine Webber; therefore, the California litigation materials are irrelevant. Even if the district court erred in its finding that BankAtlantic first discovered Tharp's employment with PWRES as a result of the California litigation materials, the materials contain other relevant and material evidence.

One issue in BankAtlantic's lawsuit against Paine Webber was whether BankAtlantic was able to mitigate damages through exiting the swaps. BankAtlantic's position was that mitigation was impossible because Homestead was not credit worthy and no other financial institution would purchase BankAtlantic's position with Homestead. In *Homestead I*, PWRES argued that Homestead was

unable to meet its side of the bargain with PWRES. PWRES emphasized Homestead's financial losses and unstable and incompetent management. Paine Webber's evidence to the contrary—that Homestead was credit worthy—only gives support to the district court's relevancy finding. The California litigation materials are relevant and material to contradict Paine Webber's evidence of credit-worthiness.

The district court found other relevant material in the *Homestead I* materials: evidence that a Homestead official testifying to Homestead's creditworthiness "lied under oath." *BankAtlantic*, 127 F.R.D. at 229. Because Paine Webber planned to rely on this official's statements to support its contention that Homestead was credit worthy, the *Homestead I* material is relevant to impeach the official.

The district court also found that the California litigation materials provided background evidence of PWRES and Homestead's relationship and why Paine Webber chose Homestead for the interest rate swaps. Based on the above, we agree with the district court that the California litigation materials were both relevant and material to BankAtlantic's lawsuit.

The discovery order was sufficiently clear to put Paine Webber on notice that the order required disclosure of the California litigation materials. These materials were both relevant and material to BankAtlantic's lawsuit. BankAtlantic suffered prejudice resulting from Paine Webber's violation of the discovery order. We hold that Paine Webber's contention that the sanction order violated due process is without merit, and the district court did not abuse its discretion in assessing reasonable attorneys' fees and costs BankAtlantic incurred against Paine Webber and Ruden Barnett as sanctions pursuant to rule 37. Paine Webber and Ruden Barnett's other contentions are without merit.

## II. Interest on Awards

Paine Webber asserts that as prevailing party it is entitled to "interest" on the award of costs from November 24, 1989, pursuant to 28 U.S.C. § 1961 (1992), which provides for interest on any money judgment in a civil case recovered in district court. Section 1961 provides that such

> interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

Paine Webber asserts that the judgment date for calculating interest is November 24, 1989, the date the court entered final judgment in favor of Paine Webber on the merits of BankAtlantic's action. BankAtlantic asserts that interest runs from July 3, 1991, the day the district court adopted the magistrate's report and recommendation, in which the magistrate concludes that Paine Webber is the prevailing party and entitled to reasonable costs and fees.

■ Supreme Court and this circuit's precedent is clear: "When a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment." *Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 799 (11th Cir.1988). *See also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (pursuant to section 1961, "postjudgment interest properly runs from the date of the entry of judgment"). We hold that interest shall accrue on Paine Webber's taxable costs from the date the court entered final judgment in favor of Paine Webber on the merits of BankAtlantic's action, November 24, 1989.

BankAtlantic asserts that it also is entitled to post-judgment interest on the district court's remuneration of fees and costs to BankAtlantic as sanctions against Paine Webber and Ruden Barnett, from July 3, 1991 (order awarding specific dollar amounts to parties). BankAtlantic reasons, however, that if this court awards post-judgment interest to Paine Webber from November 24, 1989 (final judgment on the merits), then this court should award post-judgment interest to BankAtlantic from either November 24, 1989, or July 10, 1989 (sanction order). Paine

Webber argues that BankAtlantic is not entitled to post-judgment interest because BankAtlantic never requested an award of post-judgment interest in the district court.

 Pursuant to Federal Rule of Appellate Procedure 37 (1991), in a civil case money judgment, affirmed on appeal, "whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court." Section 1961 has similar mandatory language. BankAtlantic did not waive any right to post-judgment interest. The proper date upon which interest shall be calculated for the sanction amount is July 10, 1989, the date of the sanction order. Federal Rule of Civil Procedure 54(a) (1993) defines "judgment" as including "a decree and any order from which an appeal lies." Thus, the July 10, 1989, sanction order is a "judgment" for purposes of the accrual of interest pursuant to section 1961.

## CONCLUSION

For the reasons stated, we affirm the district court's imposition of sanctions. We remand for the calculation of interest due on the sanction amount and taxable costs award contained in the district court's order, dated July 3, 1991.

AFFIRMED AND REMANDED.