**In re Georgea KOSMADAKES, Adult Ward, Julia K. Maghan, Appellant,**

**James A. Crooks, Successor, Conservator, and Auditor of the Court, et al.**

**No. 24006.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1970.

Decided May 14, 1971.

Mr. Joseph Forer, Washington, D. C., for appellant.

Mr. Charles S. Iversen, Washington, D. C., for appellee Crooks.

Before McGOWAN and TAMM, Circuit Judges, and MATTHEWS,* Senior District Judge, U. S. District Court for the District of Columbia.

MATTHEWS, Senior District Judge:

Following the entry of two judgments against Julia K. Maghan (hereafter Mrs. Maghan) arising from her accountability as the former conservator of the estate of an incompetent ward, Mrs. Maghan filed a motion to vacate the judgments. From an order of the District Court denying the motion, Mrs. Maghan appeals. The judgments are against her and her surety and are for the amounts of $17,341.96 in favor of James A. Crooks, successor conservator, and $570 in favor of the Court Auditor.

An assessment of the ruling of the District Court requires placing it in proper perspective, which in turn calls for a recital of the relevant facts and circumstances.

I

On February 21, 1967, Mrs. Maghan was appointed and qualified as conservator of her mother's estate, her mother having been committed by the District Court to Saint Elizabeth's Hospital in 1947.

At all pertinent times Mrs. Maghan was domiciled in Arlington, Virginia, residing at 3901 Chesterbrook Road. As a nonresident of the District of Columbia she complied with Rule 22(h) of the United States District Court for the District of Columbia whereby a nonresident fiduciary must file a like power of attorney to that provided in D.C.Code § 20–365 (1967 ed.) for service on nonresident executors and administrators, and designate the Clerk of the Court and his successors in office as the person upon whom all notices and process issued by a competent court in the District may be served, with like effect as personal service, in relation to all suits, matters, causes, or things affecting or pertaining to the estate of the ward of such fiduciary.

At the time of Mrs. Maghan's appointment as conservator on February 21, 1967, the ward and her husband owned as tenants by the entireties real property in Washington, D.C., known as 816–18th Street, N.W., and having a gross yearly rental of almost $14,000. The husband of the ward died October 3, 1967, and the ward then became the sole owner of the property.

On July 11, 1968, grandchildren of the ward, who in the event of her death would be among her heirs at law, filed a

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

motion seeking the removal of Mrs. Maghan as conservator. After a hearing the District Court found that Mrs. Maghan had breached her fiduciary duty in the accounting of her ward's assets, and by an order filed March 19, 1969, removed her as conservator and directed that she file her final account within 20 days from the date of the order.

After Mrs. Maghan ignored the Court's direction to so file, the Court by an order of April 28, 1969, directed the Auditor of the Court to state such account.

Cooperation on the part of Mrs. Maghan in the stating of her final account was repeatedly sought by the Deputy Auditor, James B. Lynn (hereafter referred to as the Auditor). By letter of June 24, 1969, the Auditor advised Mrs. Maghan that he had been directed by the Court to state her final account and requested that she submit within 15 days all relevant documents concerning the 18th Street property. Although Mrs. Maghan received the Auditor's letter of June 24, 1969, she submitted no documents and did not otherwise respond.

On three different dates the Auditor scheduled a hearing. A timely notice was mailed by him to Mrs. Maghan at her address of record as to each such hearing. The Clerk of the Court, pursuant to the power of attorney given to him by Mrs. Maghan, received and mailed to her at her address of record a notice of the final scheduled hearing together with an explanatory note. Mrs. Maghan neither responded nor appeared at any of the scheduled hearings.

In addition, subpoenas duces tecum requiring Mrs. Maghan's presence at the hearings were issued. The United States Marshal was unable to serve the subpoenas as there was no response at Mrs. Maghan's residence except on one occasion when her husband refused to accept the subpoena.

Failing to receive any assistance from Mrs. Maghan, the Auditor stated her account covering the full period she had served as conservator, using information of record and that supplied by the rental agent, the tenants, and the successor conservator.[1]

When on October 10, 1969, the Auditor filed his report to the Court stating the account of the removed conservator, he recommended that judgments be entered against her and her surety in favor of the successor conservator for $17,341.96 and in favor of the Court Auditor for $570. Notice of the filing of the report and a copy of the report itself were mailed to Mrs. Maghan at the same address as the prior notices. At this juncture she broke her silence and responded immediately by filing a general objection to the report.

## II

When this objection was filed by Mrs. Maghan on October 20, 1969, she had no counsel. She and her husband prepared her objection, neither being an attorney. Mr. Maghan filed the objection for his wife, and filled out a motions card in the Clerk's office.[2] On such a card a request may be made for an oral hearing.

At a hearing on December 11, 1969, Mrs. Maghan's objection was overruled. She was neither present nor represented. About two weeks later, on December 24, 1969, the Court issued its order overruling the objection, ratifying the report of the Auditor, and entering judgments against Mrs. Maghan and her surety as recommended in the Auditor's report.

Through counsel, on January 5, 1970, Mrs. Maghan filed a motion to vacate the judgments. This motion was made under Rule 59(e) and Rule 60(b), Fed. R.Civ.P.[3] Three main grounds for the

---

1. Rule 53(d) (1), Fed.R.Civ.P., provides in pertinent part: "If a party fails to appear at the time and place appointed, the [Auditor] may proceed ex parte * * *."

2. The motions card filled out by Mr. Maghan is not a part of the record.

3. Rule 59(e), Fed.R.Civ.P., provides: "A motion to alter or amend the judgment

motion were asserted: (1) that Mrs. Maghan "was not sent and did not receive notice of, and hence did not attend in person or by counsel, the hearing held by the Court on December 11, 1969, on the Report of the Deputy Auditor and the objections thereto"; (2) that the judgments are based on mistakes of fact and law contained in the report of the Auditor, and that Mrs. Maghan is not indebted to the estate of the ward, but it is indebted to her; and (3) that Mrs. Maghan's failure to account for her conservatorship and to attend hearings called by the Auditor was due to mistake, surprise and excusable neglect.

Mrs. Maghan's motion to vacate the judgments was denied by the Court on January 15, 1970, without a hearing. On January 30, 1970, she filed notice of appeal from the fiat judgment effecting such denial.

### III

We take up first the contention of Mrs. Maghan that she "was not sent and did not receive notice of, and hence did not attend in person or by counsel, the hearing held by the Court on December 11, 1969, on the Report of the Deputy Auditor and the objections thereto." She maintains that she "was not notified of the judicial hearing on the Auditor's report and was not accorded an opportunity to defend herself."

In this connection Rule 53(e) (2), Fed.R.Civ.P., provides:

"In an action to be tried without a jury the court shall accept the [Auditor's] findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The practice in the District Court is for the Auditor to make his report and recommendations in writing to the Court pursuant to the Court's order of reference, and to send a copy thereof to all interested parties. A copy of the Auditor's report in the case at bar was duly received by Mrs. Maghan, and she filed timely written objection.

Concerning the hearing held on December 11, 1969, an entry of the courtroom clerk on the reverse side of the title page of the action reads as follows:

"12–11–69 Objection of Julia K. Maghan to Report of the Deputy Auditor heard and overruled. (Order to be presented.) (Rep. Gerald Nevitt.) Hart, J."

As already related, on December 24, 1969, the Court issued its order overruling the objection, ratifying such report, and entering money judgments against Mrs. Maghan and her surety.

In her affidavit supporting her motion to vacate the judgments, Mrs. Maghan stated that she "did not know about, did not receive a notice of, and did not attend this hearing." She further asserted that she had been informed and believed "that the Clerk's office did not send [her] a notice of the hearing because of the way [her] husband filled out the motions card" at the time he

shall be served not later than 10 days after entry of the judgment."

Rule 60(b), Fed.R.Civ.P., provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons * * * mistake, inadvertence, surprise, or excusable neglect * * * newly discovered evidence * * * fraud * * * misrepresentation, or other misconduct of an adverse party * * * the judgment is void * * * the judgment has been satisfied * * * or it is no longer equitable that the judgment should have prospective application; or * * * any other reason justifying relief from the operation of the judgment."

filed her objection to the Auditor's report. Her husband also filed an affidavit about the matter.

That Mrs. Maghan was not present at the hearing is undisputed. Her absence could not have alerted the presiding judge to the possibility that she had not received notice of the hearing since from the record nonattendance at hearings after notice was for her not unusual. However, the matter of lack of notice was a specific ground upon which Mrs. Maghan based her motion to vacate the judgments. Although the motion was supported by two affidavits and there was no opposition, the Court, without a hearing, denied the motion by fiat.

■ We hold that prior to the entry of the one money judgment against Mrs. Maghan in favor of the successor conservator, as recommended in the Auditor's report, Mrs. Maghan, under Rule 53(e) (2), *supra*, was entitled to be heard on her objection to such report. From the record, we must conclude that notice of the hearing was not sent by the Clerk to Mrs. Maghan, and that she was not afforded the requisite opportunity to be heard on her objection. Accordingly the District Court should have granted Mrs. Maghan's motion to vacate the money judgment in favor of the successor conservator and rescheduled the hearing on her objection.

Since this case must be returned to the District Court for a hearing on Mrs. Maghan's objection, our views on aspects thereof may be pertinent at the hearing, and therefore, we set them forth at this time.

## IV

During the proceeding for the removal of Mrs. Maghan as conservator a question of law arose as to entitlement to the rents from the property owned by the ward and her husband as tenants by the entirety. Mrs. Maghan took the position that while both the ward and the ward's husband were living the husband alone was entitled to all the rents. She argued that she had no accountability to her ward for any portion of the rents collected during her conservatorship prior to the death of the ward's husband in October 1967. But Mrs. Maghan had collected these rents,[4] and the District Court held her accountable to her ward for one-half of them from the beginning of the conservatorship until the death of the ward's husband.

■ The Auditor in stating Mrs. Maghan's account treated the rents in this respect consistently with the ruling of the Court in the removal proceeding. Mrs. Maghan did not appeal from that ruling, but she continues to reiterate her position on this appeal. We believe that the Auditor's treatment of these rents is in accord with the applicable law.[5]

Contesting her alleged indebtedness to the ward, Mrs. Maghan claims that she made expenditures for which the Auditor has not given her credit.

■ We realize that expense is involved in the proper care of an incompe-

4. In an affidavit filed by Mrs. Maghan February 10, 1969, she indicated that under a power of attorney from the ward's husband (Mrs. Maghan's father) she had since the year 1964 been in charge of the subject property including the fixing and collection of rents.

5. In Fairclaw v. Forrest, 76 U.S.App.D.C. 197, 201, 130 F.2d 829, 833 (1942), cert. denied, 318 U.S. 756, 63 S.Ct. 531, 87 L.Ed. 1130 (1943), we said of an estate by the entirety: "The Married Woman's Property Statutes have changed the common-law principles of marital unity so that the husband cannot now assert an exclusive right to the rents and profits * * *." In Lipsitz v. Commissioner of Internal Revenue, 220 F.2d 871, 873 (4th Cir.), cert. denied, 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753 (1955), a Maryland case, the Court said at page 873: "It is well settled that the measure of title, and the rights thereto incident, in property held by husband and wife under a tenancy by the entirety, are to be determined here by the law of Maryland. And under that law, each spouse, husband and wife, is ordinarily entitled each to one-half of the income * * *."

tent ward and her income-producing real estate.[6] But freedom of action in spending the money of an incompetent ward is not given to a court-appointed fiduciary.

Rule 22(c) of the District Court governs the expenditures of fiduciaries. It provides in pertinent part:

"All expenditures from an estate by a fiduciary, except those provided by statute and court costs, shall be made only upon prior authorization of the Court. Failure of a fiduciary to obtain prior Court authority for expenditures, other than those provided by statute and court costs, shall constitute an irregularity in the administration of the estate and such expenditures shall be disallowed as a charge to the estate upon annual accounting except for good cause shown."

Mrs. Maghan, like other fiduciaries, is required to make a reasonable showing that an expense she alleges has, in fact, been incurred by her before she may receive therefor credit and allowance.

■ The record shows that in her first annual report Mrs. Maghan listed expenditures which were properly evidenced by supporting vouchers. These were allowed. No other expenditures alleged by her were credited by the Auditor in the accounting because they had neither been previously authorized by the Court nor authenticated in any way. Although requested by the Auditor to come forward with the necessary vouchers covering the expenditures alleged, Mrs. Maghan did not produce them.[7] The Auditor could not properly give her credit and allowance for unauthorized and unauthenticated expenditures.

If Mrs. Maghan proffers the required verification of her alleged expenditures,

the Court, under Rule 53(e) (2), *supra*, after the hearing of Mrs. Maghan's objection to the Auditor's report, "may receive further evidence or may recommit" the report "with instructions."

The Auditor's statement of Mrs. Maghan's account is detailed. Among other things it lists a monthly rent for each rental unit for the entire period involved in Mrs. Maghan's conservatorship. It also states all disbursements which have been authorized or authenticated.

Nevertheless, Mrs. Maghan claims not only that the Auditor failed to give her credit for disbursements, but that he overstated rents and failed to take vacancies into consideration. However, she has not specified wherein she claims the Auditor overstated the rents or failed to consider vacancies. At the hearing on her objection, Mrs. Maghan may establish these claims, if she is able to do so.

■ We discuss now the judgment for $570 in favor of the Court Auditor.

Concededly Mrs. Maghan was directed by the Court to file a final account within 20 days thereafter, and when she disregarded this direction, the Court referred the matter to the Auditor to state her account. Time and expense were furthered in the preparation of this account because of Mrs. Maghan's refusal to meet reasonable requests of the Auditor for her assistance.

Although Mrs. Maghan moved to vacate the judgment for $570 in favor of the Auditor, neither in her written objection to the Auditor's report nor elsewhere has she challenged the reasonableness of the $570 charge.

Under these circumstances we do not think it was an abuse of discretion by the District Court to deny Mrs. Magh-

---

6. Annual expenditures for the subject property were estimated at $6,500 in an appraisal of the property filed July 11, 1968, in support of a petition for Court approval of a rent increase for the "Carry-Out" shop.

7. Rule 53(c) Fed.R.Civ.P., provides that the Auditor "may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, *vouchers*, documents, and writings applicable thereto." (Emphasis added.)

an's motion to vacate the judgment for $570 in favor of the Auditor.

## VI

The fiat judgment of January 15, 1970, is affirmed insofar as it denies Mrs. Maghan's motion to vacate the judgment against her and her surety in favor of the Court Auditor in the sum of $570; and otherwise said fiat judgment is reversed. The District Court is directed (1) to vacate so much of its order of December 24, 1969, as grants judgment against Mrs. Maghan and her surety in favor of the successor conservator in the sum of $17,341.96, (2) to hold a hearing on Mrs. Maghan's objection to the Auditor's report, (3) to make a determination as to said objection on its merits, and thereafter (4) to make such amendment, if any, to its said order ratifying the Auditor's report as under the circumstances it may deem just and proper.

It is so ordered.